IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF KANSAS
KANSAS CITY

| | | |
|---|---|---|
| Sally S. Hilkene | ) | |
| | ) | |
| Plaintiff, | ) | 04-2253-KHV |
| | ) | Case No: |
| vs. | ) | |
| | ) | |
| WD-40 Company | ) | |
| A Delaware Corporation | ) | |
| | ) | |
| and | ) | |
| | ) | |
| Heartland Corporation | ) | |
| A Kansas Corporation | ) | |
| | ) | |
| and | ) | |
| | ) | |
| Scott H. Hilkene | ) | |
| | ) | |
| Defendants. | ) | |

**COMPLAINT**

Plaintiff Sally S. Hilkene ("Plaintiff"), for her claims against Defendants WD-40 Company ("WD-40"), Heartland Corporation ("Heartland") and Scott H. Hilkene ("Hilkene"), states:

**JURISDICTION**

1. Plaintiff is a citizen of the State of Kansas.

2. WD-40 is incorporated under the laws of the State of Delaware and has its principal place of business in the State of California.

3. This Court has original jurisdiction over Plaintiff's claim against WD-40 because:

a. WD-40 stock is registered with the Securities and Exchange Commission and its common stock is traded in the over-the-counter market (NASDAQ National Market System);

b. This action is brought against it pursuant to the Securities Act of 1934,15 U.S.C. § 78j (2004), 17 C.F.R. § 240.10b-5 (2004) and the Securities Act of 1933, 15 U.S.C. § 77k (2004) (Federal Securities Fraud Law);

c. It does business and committed acts giving rise to Plaintiff's claims in the State of Kansas;

d. It agreed to submit to Kansas law with respect to the agreements of the parties that relate to the acts that are the subject of Plaintiff's claims.

4. Hilkene is a citizen of the State of Kansas. Hilkene committed the acts giving rise to Plaintiff's claim against him in the State of Kansas.

5. Heartland is a Kansas Corporation that is authorized to do business in, has an office in, and does business in the State of Kansas. Heartland committed the acts giving rise to Plaintiff's claim against it in the State of Kansas.

6. Pursuant to 28 U.S.C. §§ 1331 and 1337, this Court has jurisdiction over this action because a federal question is involved.

7. Pursuant to 28 U.S.C. § 1367, this Court has supplemental jurisdiction over the Hilkene counts and the Heartland common law counts because those counts form part of the same case or controversy under Article III of the United States Constitution.

## PLAINTIFF'S ACQUISITION OF WD-40 STOCK

8. On May 3, 2002, WD-40 entered into an agreement with Plaintiff and Hilkene ("the Purchase Agreement").

9. In the Purchase Agreement, WD-40 promised to purchase from Plaintiff and Hilkene all of the issued Common Stock of Heartland and Plaintiff's marital interest in the stock ("the Heartland Stock") at an agreed upon purchase price ("the Purchase Price").

10. The Purchase Price was to be paid by WD-40 in part by cash and in part by the transfer to Plaintiff of 226,105 shares and to Hilkene of 208,017 shares of the Common Stock of WD-40 ("the WD-40 Stock").

11. On May 31, 2002, Plaintiff and Hilkene transferred to WD-40 all of their interest in the Heartland Stock and WD-40 transferred to Plaintiff and Hilkene the WD-40 Stock ("the Closing").

12. At the Closing, Plaintiff received 226,105 shares of WD-40 Stock ("Plaintiff's WD-40 Stock").

13. Since the Closing, Plaintiff has continuously owned shares of Plaintiff's WD-40 Stock.

## COUNT I

## FEDERAL SECURITIES FRAUD CLAIM AGAINST WD-40 REPRESENTATIONS OF FUTURE EVENTS

14. Plaintiff realleges and incorporates by reference the allegations of Paragraphs 1 through 13 above.

15. Commencing in early 2002, before signing the Purchase Agreement, WD-40 made to Plaintiff the following representations ("the WD-40 Representations of Future Events"):

a. That during the negotiation of the Purchase Agreement and through Closing, WD-40 would not communicate with employees or legal representatives of Heartland about:

1. The purchase by Heartland employees of Heartland assets or WD-40 assets;

2. Heartland paying fees, salary, commissions or other payments to employees or legal representatives of Heartland after Closing;

3. WD-40 paying fees, salary, commissions or other payments to employees or legal representatives of Heartland in addition to the payments required by the Purchase Agreement;

4. Vendors, customers or brokers of WD-40 or Heartland paying fees, salary, commissions or other payments to employees or legal representatives of Heartland;

b. That Heartland's May 31, 2002 financial statements would be prepared in accordance with the methodology it used to prepare its December 31, 2001 financial statements;

c. That Heartland would not take any write-offs that did not conform to the write-offs reflected in its December 31, 2001 financial statements;

d. That WD-40 would not ask or cause Heartland to pay expenses that WD-40 should pay pursuant to past practices of Heartland and generally accepted accounting principles;

e. That WD-40 would not determine or participate in determining the manner in which Heartland prepared its financial statements for any period before the Closing;

f. That WD-40 would determine the adjustment to the Purchase Price ("the Purchase Price Adjustment") strictly in accordance with the terms of the Purchase Agreement;

g. That WD-40 would determine the Heartland Purchase Price Adjustment within seventy-five days of Closing;

h. That WD-40 would obtain and preserve all of the books and records of Heartland that related to its operations, assets and obligations (e.g., support calculations for the bonuses and commissions paid to Heartland employees, pay agreements for Heartland employees, banking resolutions and agreements, engagement letters of auditors, Heartland's price lists from PLAZE, the primary manufacturer of Heartland products);

i. That WD-40 and Heartland would enforce the non-compete agreement that Heartland had with Hilkene.

16. Plaintiff was induced to execute the Purchase Agreement and participate in the Closing because of the WD-40 Representations of Future Events.

17. The WD-40 Representations of Future Events caused Plaintiff to acquire the WD-40 Stock since Plaintiff would not have entered into the Purchase Agreement or proceeded with the Closing and the acquisition of the WD-40 Stock if these Representations of Future Events had not been made.

18. The WD-40 Representations of Future Events are false because:

a. During the negotiation of the Purchase Agreement and through Closing, WD-40 communicated with employees or legal representatives of Heartland about:

1. WD-40 paying fees, salary, commissions or other payments to employees or legal representatives of Heartland in addition to the payments required by the Purchase Agreement;

2. Vendors, customers or brokers of WD-40 or Heartland paying fees, salary, commissions or other payments to employees or legal representatives of Heartland;

b. According to WD-40's Form 10-Q for May 31, 2002, on June 28, 2002, WD-40 entered into an agreement with former employees of Heartland to sell certain of the developing brands acquired in conjunction with the Heartland acquisition;

c. Thomas Ruzicka, Esq., attorney for Heartland, did not receive compensation from Heartland for services he rendered to it in the offer of sale of its stock to WD-40 and other potential buyers and the subsequent Closing of the sale to WD-40;

d. Heartland's May 31, 2002 financial statements reflect write-offs and accruals that were inconsistent with Heartland's December 31, 2001 financial statements and reduced the Purchase Price. Moreover, although Heartland's December 31, 2001 financial statements were audited, Heartland's May 31, 2002 financial statements were not audited;

e. According to Heartland CFO Conni Woolard's notes, Jay Rembolt of WD-40 participated in determining the manner in which Heartland prepared its financial statements before the Closing by instructing Heartland to take specific write-offs;

f. WD-40 adjusted the net book value of Heartland in a manner that was inconsistent with the Purchase Agreement;

g. WD-40 did not obtain and/or preserve:

1. The Heartland laptop computer used by Conni Woolard, nor did it request that she deliver the computer to Plaintiff;

2. Support calculations for the bonuses and commissions paid to Heartland employees;

3. Pay agreements for Heartland employees;

4. Banking resolutions and agreements;

5. Engagement letters of auditors; or

6. Heartland's price lists from PLAZE, the primary manufacturer of Heartland products;

h. WD-40 and Heartland did not enforce the non-compete agreement that Heartland had with Hilkene. On information and belief, Hilkene is currently employed by Bissell, a competitor of Heartland and WD-40.

19. A reasonable person would not have entered into the Purchase Agreement or proceeded with the Closing and the acquisition of the WD-40 Stock if she knew that the Representations of Future Events were false.

20. Plaintiff was damaged in excess of $5 million because the WD-40 Representations of Future Events were false, in that:

a. She received less compensation for the Heartland Stock than she would have received if she had known before the Purchase Agreement was executed and Closing that the Representations of Future Events were false;

b. She incurred attorneys and accounting fees and expenses in attempting to obtain access to Heartland Records;

c. She has been unable to secure access to certain of Heartland Records, including but not limited to the electronic and written records of Heartland CFO Conni Woolard;

d. The Purchase Price was reduced significantly because of actions of WD-40 which are contrary to the WD-40 Representations of Future Events.

21. WD-40 violated the Federal Securities Laws by making the WD-40 Representations of Future Events.

**WHEREFORE**, Plaintiff prays the Court award to her a judgment against WD-40 for her damages and her costs.

**COUNT II**

**FEDERAL SECURITIES FRAUD CLAIM AGAINST WD-40 REPRESENTATIONS OF EXISTING FACTS**

22. Plaintiff realleges and incorporates by reference the allegations of Paragraphs 1 through 21 above.

23. Commencing in early 2002, WD-40 made to Plaintiff the following representations ("the WD-40 Representations of Existing Facts"):

a. That during the negotiation of the Purchase Agreement and through Closing, WD-40 had not communicated with employees or legal representatives of Heartland about:

1. The purchase by Heartland employees of Heartland assets or WD-40 assets;

2. Heartland paying fees, salary, commissions or other payments to employees or legal representatives of Heartland after Closing;

3. WD-40 paying fees, salary, commissions or other payments to employees or legal representatives of Heartland in addition to the payments required by the Purchase Agreement;

4. Vendors, customers or brokers of WD-40 or Heartland paying fees, salary, commissions or other payments to employees or legal representatives of Heartland;

b. That Heartland did not take any write-offs that did not conform to the write-offs reflected in its December 31, 2001 financial statements;

c. That WD-40 did not ask or cause Heartland to pay expenses that WD-40 should have paid pursuant to past practices of Heartland and generally accepted accounting principles;

d. That WD-40 did not determine or participate in determining the manner in which Heartland prepared its financial statements for any period before the Closing;

e. That WD-40 obtained and preserved all of the books and records of Heartland that related to its operations, assets and obligations (e.g., support calculations for the bonuses and commissions paid to Heartland employees, pay agreements for Heartland employees, banking resolutions and agreements, engagement letters of auditors, Heartland's price lists from PLAZE, the primary manufacturer of Heartland products);

f. That WD-40 and Heartland enforced the non-compete agreement that Heartland had with Hilkene.

24. Plaintiff was induced to execute the Purchase Agreement and participate in the Closing because of the WD-40 Representations of Existing Facts.

25. The WD-40 Representations of Existing Facts caused Plaintiff to acquire the WD-40 Stock since Plaintiff would not have entered into the Purchase Agreement or proceeded with the Closing and the acquisition of the WD-40 Stock if these Representations of Existing Facts had not been made.

26. The WD-40 Representations of Existing Facts are false because:

a. During the negotiation of the Purchase Agreement and through Closing, WD-40 communicated with employees or legal representatives of Heartland about:

1. WD-40 paying fees, salary, commissions or other payments to employees or legal representatives of Heartland in addition to the payments required by the Purchase Agreement;

2. Vendors, customers or brokers of WD-40 or Heartland paying fees, salary, commissions or other payments to employees or legal representatives of Heartland;

b. According to WD-40's Form 10-Q for May 31, 2002, on June 28, 2002, WD-40 entered into an agreement with former employees of

Heartland to sell certain of the developing brands acquired in conjunction with the Heartland acquisition;

c. Thomas Ruzicka, Esq., attorney for Heartland, did not receive compensation from Heartland for services he rendered to it in the offer of sale of its stock to WD-40 and other potential buyers and the subsequent Closing of the sale to WD-40;

d. Heartland's May 31, 2002 financial statements reflect write-offs and accruals that were inconsistent with Heartland's December 31, 2001 financial statements and reduced the Purchase Price. Moreover, although Heartland's December 31, 2001 financial statements were audited, Heartland's May 31, 2002 financial statements were not audited;

e. According to Heartland CFO Conni Woolard's notes, Jay Rembolt of WD-40 participated in determining the manner in which Heartland prepared its financial statements before the Closing by instructing Heartland to take specific write-offs;

f. WD-40 adjusted the net book value of Heartland in a manner that was inconsistent with the Purchase Agreement;

g. WD-40 did not obtain and/or preserve:

1. The Heartland laptop computer used by Conni Woolard, nor did it request that she deliver the computer to Plaintiff;

2. Support calculations for the bonuses and commissions paid to Heartland employees;

3. Pay agreements for Heartland employees;

4. Banking resolutions and agreements;

5. Engagement letters of auditors; or

6. Heartland's price lists from PLAZE, the primary manufacturer of Heartland products;

h. WD-40 and Heartland did not enforce the non-compete agreement that Heartland had with Hilkene. On information and belief, Hilkene is currently employed by Bissell, a competitor of Heartland and WD-40.

27. A reasonable person would not have entered into the Purchase Agreement or proceeded with the Closing and the acquisition of the WD-40 Stock if she knew that the Representations of Existing Facts were false.

28. Plaintiff was damaged in excess of $5 million because the WD-40 Representations of Existing Facts were false, in that:

a. She received less compensation for the Heartland Stock than she would have received if she had known before the Purchase Agreement was executed and Closing that the Representations of Existing Facts were false;

b. She incurred attorneys and accounting fees and expenses in attempting to obtain access to Heartland Records;

c. She has been unable to secure access to certain of Heartland Records, including but not limited to the electronic and written records of Heartland CFO Conni Woolard;

d. The Purchase Price was reduced significantly because of actions of WD-40 which are contrary to the WD-40 Representations of Existing Facts.

29. WD-40 violated the Federal Securities Laws by making the WD-40 Representations of Existing Facts.

**WHEREFORE**, Plaintiff prays the Court award to her a judgment against WD-40 for her damages and her costs.

**COUNT III**

**FEDERAL SECURITIES FRAUD CLAIM AGAINST WD-40**
**FRAUD THROUGH SILENCE**

30. Plaintiff realleges and incorporates by reference the allegations of Paragraphs 1 through 29 above.

31. Commencing in early 2002, WD-40 made to Plaintiff the following Representations of Existing Fact:

a. That during the negotiation of the Purchase Agreement and through Closing, WD-40 had not communicated with employees or legal representatives of Heartland about:

1. The purchase by Heartland employees of Heartland assets or WD-40 assets;

2. Heartland paying fees, salary, commissions or other payments to employees or legal representatives of Heartland after Closing;

3. WD-40 paying fees, salary, commissions or other payments to employees or legal representatives of Heartland in addition to the payments required by the Purchase Agreement;

4. Vendors, customers or brokers of WD-40 or Heartland paying fees, salary, commissions or other payments to employees or legal representatives of Heartland;

b. That Heartland did not take any write-offs that did not conform to the write-offs reflected in its December 31, 2001 financial statements;

c. That WD-40 did not ask or cause Heartland to pay expenses that WD-40 should have paid pursuant to past practices of Heartland and generally accepted accounting principles;

d. That WD-40 did not determine or participate in determining the manner in which Heartland prepared its financial statements for any period before the Closing;

e. That WD-40 obtained and preserved all of the books and records of Heartland that related to its operations, assets and obligations (e.g., support calculations for the bonuses and commissions paid to Heartland employees, pay agreements for Heartland employees, banking

resolutions and agreements, engagement letters of auditors, Heartland's price lists from PLAZE, the primary manufacturer of Heartland products);

f. That WD-40 and Heartland enforced the non-compete agreement that Heartland had with Hilkene.

32. Plaintiff was induced to execute the Purchase Agreement and participate in the Closing because of the WD-40 Representations of Existing Facts.

33. The WD-40 Representations of Existing Facts caused Plaintiff to acquire the WD-40 Stock since Plaintiff would not have entered into the Purchase Agreement or proceeded with the Closing and the acquisition of the WD-40 Stock if the Representations of Existing Facts had not been made.

34. The WD-40 Representations of Existing Facts are false because:

a. During the negotiation of the Purchase Agreement and through Closing, WD-40 communicated with employees or legal representatives of Heartland about:

1. WD-40 paying fees, salary, commissions or other payments to employees or legal representatives of Heartland in addition to the payments required by the Purchase Agreement;

2. Vendors, customers or brokers of WD-40 or Heartland paying fees, salary, commissions or other payments to employees or legal representatives of Heartland;

b. According to WD-40's Form 10-Q for May 31, 2002, on June 28, 2002, WD-40 entered into an agreement with former employees of Heartland to sell certain of the developing brands acquired in conjunction with the Heartland acquisition;

c. Thomas Ruzicka, Esq., attorney for Heartland, did not receive compensation from Heartland for services he rendered to it in the offer of sale of its stock to WD-40 and other potential buyers and the subsequent Closing of the sale to WD-40;

d. Heartland's May 31, 2002 financial statements reflect write-offs and accruals that were inconsistent with Heartland's December 31, 2001 financial statements and reduced the Purchase Price. Moreover, although Heartland's December 31, 2001 financial statements were audited, Heartland's May 31, 2002 financial statements were not audited;

e. According to Heartland CFO Conni Woolard's notes, Jay Rembolt of WD-40 participated in determining the manner in which Heartland prepared its financial statements before the Closing by instructing Heartland to take specific write-offs;

f. WD-40 adjusted the net book value of Heartland in a manner that was inconsistent with the Purchase Agreement;

g. WD-40 did not obtain and/or preserve:

1. The Heartland laptop computer used by Conni Woolard, nor did it request that she deliver the computer to Plaintiff;

2. Support calculations for the bonuses and commissions paid to Heartland employees;

3. Pay agreements for Heartland employees;

4. Banking resolutions and agreements;

5. Engagement letters of auditors; or

6. Heartland's price lists from PLAZE, the primary manufacturer of Heartland products;

h. WD-40 and Heartland did not enforce the non-compete agreement that Heartland had with Hilkene. On information and belief, Hilkene is currently employed by Bissell, a competitor of Heartland and WD-40.

35. A reasonable person would not have entered into the Purchase Agreement or proceeded with the Closing and the acquisition of the WD-40 Stock if she knew that the Representations of Existing Facts were false.

36. Plaintiff was damaged in excess of $5 million because the WD-40 Representations of Existing Facts were false, in that:

a. She received less compensation for the Heartland Stock than she would have received if she had known before the Purchase Agreement was executed and Closing that the Representations of Existing Facts were false;

b. She incurred attorneys and accounting fees and expenses in attempting to obtain access to Heartland Records;

c. She has been unable to secure access to certain of Heartland Records, including but not limited to the electronic and written records of Heartland CFO Conni Woolard;

d. The Purchase Price was reduced significantly because of actions of WD-40 which are contrary to the WD-40 Representations of Existing Facts.

37. WD-40 violated the Federal Securities Laws by making the WD-40 Representations of Existing Facts.

**WHEREFORE**, Plaintiff prays the Court award to her a judgment against WD-40 for her damages and her costs.

**COUNT IV**

**COMMON LAW FRAUD CLAIM AGAINST WD-40 REPRESENTATIONS OF FUTURE EVENTS**

38. Plaintiff realleges and incorporates by reference the allegations of Paragraphs 1 through 37 above.

39. Commencing in early 2002, before signing the Purchase Agreement, WD-40 made to Plaintiff the following Representations of Future Events:

a. That during the negotiation of the Purchase Agreement and through Closing, WD-40 would not communicate with employees or legal representatives of Heartland about:

1. The purchase by Heartland employees of Heartland assets or WD-40 assets;

2. Heartland paying fees, salary, commissions or other payments to employees or legal representatives of Heartland after Closing;

3. WD-40 paying fees, salary, commissions or other payments to employees or legal representatives of Heartland in addition to the payments required by the Purchase Agreement;

4. Vendors, customers or brokers of WD-40 or Heartland paying fees, salary, commissions or other payments to employees or legal representatives of Heartland;

b. That Heartland's May 31, 2002 financial statements would be prepared in accordance with the methodology it used to prepare its December 31, 2001 financial statements;

c. That Heartland would not take any write-offs that did not conform to the write-offs reflected in its December 31, 2001 financial statements;

d. That WD-40 would not ask or cause Heartland to pay expenses that WD-40 should pay pursuant to past practices of Heartland and generally accepted accounting principles;

e. That WD-40 would not determine or participate in determining the manner in which Heartland prepared its financial statements for any period before the Closing;

f. That WD-40 would determine the Purchase Price Adjustment strictly in accordance with the terms of the Purchase Agreement;

g. That WD-40 would obtain and preserve all of the books and records of Heartland that related to its operations, assets and obligations (e.g., support calculations for the bonuses and commissions paid to Heartland employees, pay agreements for Heartland employees, banking resolutions and agreements, engagement letters of auditors, Heartland's price lists from PLAZE, the primary manufacturer of Heartland products);

h. That WD-40 and Heartland would enforce the non-compete agreement that Heartland had with Hilkene.

40. Plaintiff was induced to execute the Purchase Agreement and participate in the Closing because of the WD-40 Representations of Future Events.

41. The WD-40 Representations of Future Events caused Plaintiff to acquire the WD-40 Stock since Plaintiff would not have entered into the Purchase Agreement or proceeded with the Closing and the acquisition of the WD-40 Stock if these Representations of Future Events had not been made.

42. The WD-40 Representations of Future Events are false because:

a. During the negotiation of the Purchase Agreement and through Closing, WD-40 communicated with employees or legal representatives of Heartland about:

1. WD-40 paying fees, salary, commissions or other payments to employees or legal representatives of Heartland in addition to the payments required by the Purchase Agreement;

2. Vendors, customers or brokers of WD-40 or Heartland paying fees, salary, commissions or other payments to employees or legal representatives of Heartland;

b. According to WD-40's Form 10-Q for May 31, 2002, on June 28, 2002, WD-40 entered into an agreement with former employees of Heartland to sell certain of the developing brands acquired in conjunction with the Heartland acquisition;

c. Thomas Ruzicka, Esq., attorney for Heartland, did not receive compensation from Heartland for services he rendered to it in the offer of sale of its stock to WD-40 and other potential buyers and the subsequent Closing of the sale to WD-40;

d. Heartland's May 31, 2002 financial statements reflect write-offs and accruals that were inconsistent with Heartland's December 31, 2001 financial statements and reduced the Purchase Price. Moreover, although Heartland's December 31, 2001 financial statements were audited, Heartland's May 31, 2002 financial statements were not audited;

e. According to Heartland CFO Conni Woolard's notes, Jay Rembolt of WD-40 participated in determining the manner in which

Heartland prepared its financial statements before the Closing by instructing Heartland to take specific write-offs;

f. WD-40 adjusted the net book value of Heartland in a manner that was inconsistent with the Purchase Agreement;

g. WD-40 did not obtain and/or preserve:

1. The Heartland laptop computer used by Conni Woolard, nor did it request that she deliver the computer to Plaintiff;

2. Support calculations for the bonuses and commissions paid to Heartland employees;

3. Pay agreements for Heartland employees;

4. Banking resolutions and agreements;

5. Engagement letters of auditors; or

6. Heartland's price lists from PLAZE, the primary manufacturer of Heartland products;

h. WD-40 and Heartland did not enforce the non-compete agreement that Heartland had with Hilkene. On information and belief, Hilkene is currently employed by Bissell, a competitor of Heartland and WD-40.

43. A reasonable person would not have entered into the Purchase Agreement or proceeded with the Closing and the acquisition of the WD-40 Stock if she knew that the Representations of Future Events were false.

44. Plaintiff was damaged in excess of $5 million because the WD-40 Representations of Future Events were false, in that:

a. She received less compensation for the Heartland Stock than she would have received if she had known before the Purchase Agreement was executed and Closing that the Representations of Future Events were false;

b. She incurred attorneys and accounting fees and expenses in attempting to obtain access to Heartland Records;

c. She has been unable to secure access to certain of Heartland Records, including but not limited to the electronic and written records of Heartland CFO Conni Woolard;

d. The Purchase Price was reduced significantly because of actions of WD-40 which are contrary to the WD-40 Representations of Future Events.

**WHEREFORE**, Plaintiff prays the Court award to her a judgment against WD-40 for her damages and her costs.

**COUNT V**

**COMMON LAW FRAUD CLAIM AGAINST WD-40 REPRESENTATIONS OF EXISTING FACTS**

45. Plaintiff realleges and incorporates by reference the allegations of Paragraphs 1 through 44 above.

46. Commencing in early 2002, WD-40 made to Plaintiff the following Representations of Existing Facts:

a. That during the negotiation of the Purchase Agreement and through Closing, WD-40 had not communicated with employees or legal representatives of Heartland about:

1. The purchase by Heartland employees of Heartland assets or WD-40 assets;

2. Heartland paying fees, salary, commissions or other payments to employees or legal representatives of Heartland after Closing;

3. WD-40 paying fees, salary, commissions or other payments to employees or legal representatives of Heartland in addition to the payments required by the Purchase Agreement;

4. Vendors, customers or brokers of WD-40 or Heartland paying fees, salary, commissions or other payments to employees or legal representatives of Heartland;

b. That Heartland did not take any write-offs that did not conform to the write-offs reflected in its December 31, 2001 financial statements;

c. That WD-40 did not ask or cause Heartland to pay expenses that WD-40 should pay pursuant to past practices of Heartland and generally accepted accounting principles;

d. That WD-40 did not determine or participate in determining the manner in which Heartland prepared its financial statements for any period before the Closing;

e. That WD-40 obtained and preserved all of the books and records of Heartland that related to its operations, assets and obligations (e.g., support calculations for the bonuses and commissions paid to Heartland employees, pay agreements for Heartland employees, banking resolutions and agreements, engagement letters of auditors, Heartland's price lists from PLAZE, the primary manufacturer of Heartland products);

f. That WD-40 and Heartland enforced the non-compete agreement that Heartland had with Hilkene.

47. Plaintiff was induced to execute the Purchase Agreement and participate in the Closing because of the WD-40 Representations of Existing Facts.

48. The WD-40 Representations of Existing Facts caused Plaintiff to acquire the WD-40 Stock since Plaintiff would not have entered into the Purchase Agreement or proceeded with the Closing and the acquisition of the WD-40 Stock if these Representations of Existing Facts had not been made.

49. The WD-40 Representations of Existing Facts are false because:

a. During the negotiation of the Purchase Agreement and through Closing, WD-40 communicated with employees or legal representatives of Heartland about:

1. WD-40 paying fees, salary, commissions or other payments to employees or legal representatives of Heartland in addition to the payments required by the Purchase Agreement;

2. Vendors, customers or brokers of WD-40 or Heartland paying fees, salary, commissions or other payments to employees or legal representatives of Heartland;

b. According to WD-40's Form 10-Q for May 31, 2002, on June 28, 2002, WD-40 entered into an agreement with former employees of Heartland to sell certain of the developing brands acquired in conjunction with the Heartland acquisition;

c. Thomas Ruzicka, Esq., attorney for Heartland, did not receive compensation from Heartland for services he rendered to it in the offer of sale of its stock to WD-40 and other potential buyers and the subsequent Closing of the sale to WD-40;

d. Heartland's May 31, 2002 financial statements reflect write-offs and accruals that were inconsistent with Heartland's December 31, 2001 financial statements and reduced the Purchase Price. Moreover, although Heartland's December 31, 2001 financial statements were audited, Heartland's May 31, 2002 financial statements were not audited;

e. According to Heartland CFO Conni Woolard's notes, Jay Rembolt of WD-40 participated in determining the manner in which

Heartland prepared its financial statements before the Closing by instructing Heartland to take specific write-offs;

f. WD-40 adjusted the net book value of Heartland in a manner that was inconsistent with the Purchase Agreement;

g. WD-40 did not obtain and/or preserve:

1. The Heartland laptop computer used by Conni Woolard, nor did it request that she deliver the computer to Plaintiff;

2. Support calculations for the bonuses and commissions paid to Heartland employees;

3. Pay agreements for Heartland employees;

4. Banking resolutions and agreements;

5. Engagement letters of auditors; or

6. Heartland's price lists from PLAZE, the primary manufacturer of Heartland products;

h. WD-40 and Heartland did not enforce the non-compete agreement that Heartland had with Hilkene. On information and belief, Hilkene is currently employed by Bissell, a competitor of Heartland and WD-40.

50. A reasonable person would not have entered into the Purchase Agreement or proceeded with the Closing and the acquisition of the WD-40 Stock if she knew that the Representations of Existing Facts were false.

51. Plaintiff was damaged in excess of $5 million because the WD-40 Representations of Existing Facts were false, in that:

a. She received less compensation for the Heartland Stock than she would have received if she had known before the Purchase Agreement was executed and Closing that the Representations of Existing Facts were false;

b. She incurred attorneys and accounting fees and expenses in attempting to obtain access to Heartland Records;

c. She has been unable to secure access to certain of Heartland Records, including but not limited to the electronic and written records of Heartland CFO Conni Woolard;

d. The Purchase Price was reduced significantly because of actions of WD-40 which are contrary to the WD-40 Representations of Existing Facts.

**WHEREFORE**, Plaintiff prays the Court award to her a judgment against WD-40 for her damages and her costs.

## COUNT VI

## COMMON LAW FRAUD CLAIM AGAINST WD-40 FRAUD THROUGH SILENCE

52. Plaintiff realleges and incorporates by reference the allegations of Paragraphs 1 through 51 above.

53. Commencing in early 2002, WD-40 made to Plaintiff the following Representations of Existing Fact:

a. That during the negotiation of the Purchase Agreement and through Closing, WD-40 had not communicated with employees or legal representatives of Heartland about:

1. The purchase by Heartland employees of Heartland assets or WD-40 assets;

2. Heartland paying fees, salary, commissions or other payments to employees or legal representatives of Heartland after Closing;

3. WD-40 paying fees, salary, commissions or other payments to employees or legal representatives of Heartland in addition to the payments required by the Purchase Agreement;

4. Vendors, customers or brokers of WD-40 or Heartland paying fees, salary, commissions or other payments to employees or legal representatives of Heartland;

b. That Heartland did not take any write-offs that did not conform to the write-offs reflected in its December 31, 2001 financial statements;

c. That WD-40 did not ask or cause Heartland to pay expenses that WD-40 should have paid pursuant to past practices of Heartland and generally accepted accounting principles;

d. That WD-40 did not determine or participate in determining the manner in which Heartland prepared its financial statements for any period before the Closing;

e. That WD-40 obtained and preserved all of the books and records of Heartland that related to its operations, assets and obligations (e.g., support calculations for the bonuses and commissions paid to Heartland employees, pay agreements for Heartland employees, banking resolutions and agreements, engagement letters of auditors, Heartland's price lists from PLAZE, the primary manufacturer of Heartland products);

f. That WD-40 and Heartland enforced the non-compete agreement that Heartland had with Hilkene.

54. Plaintiff was induced to execute the Purchase Agreement and participate in the Closing because of the WD-40 Representations of Existing Facts.

55. The WD-40 Representations of Existing Facts caused Plaintiff to acquire the WD-40 Stock since Plaintiff would not have entered into the Purchase Agreement or proceeded with the Closing and the acquisition of the WD-40 Stock if the Representations of Existing Facts had not been made.

56. The WD-40 Representations of Existing Facts are false because:

a. During the negotiation of the Purchase Agreement and through Closing, WD-40 communicated with employees or legal representatives of Heartland about:

1. WD-40 paying fees, salary, commissions or other payments to employees or legal representatives of Heartland in addition to the payments required by the Purchase Agreement;

2. Vendors, customers or brokers of WD-40 or Heartland paying fees, salary, commissions or other payments to employees or legal representatives of Heartland;

b. According to WD-40's Form 10-Q for May 31, 2002, on June 28, 2002, WD-40 entered into an agreement with former employees of Heartland to sell certain of the developing brands acquired in conjunction with the Heartland acquisition;

c. Thomas Ruzicka, Esq., attorney for Heartland, did not receive compensation from Heartland for services he rendered to it in the offer of sale of its stock to WD-40 and other potential buyers and the subsequent Closing of the sale to WD-40;

d. Heartland's May 31, 2002 financial statements reflect write-offs and accruals that were inconsistent with Heartland's December 31, 2001 financial statements and reduced the Purchase Price. Moreover, although Heartland's December 31, 2001 financial statements were audited, Heartland's May 31, 2002 financial statements were not audited;

e. According to Heartland CFO Conni Woolard's notes, Jay Rembolt of WD-40 participated in determining the manner in which

Heartland prepared its financial statements before the Closing by instructing Heartland to take specific write-offs;

f. WD-40 adjusted the net book value of Heartland in a manner that was inconsistent with the Purchase Agreement;

g. WD-40 did not obtain and/or preserve:

1. The Heartland laptop computer used by Conni Woolard, nor did it request that she deliver the computer to Plaintiff;

2. Support calculations for the bonuses and commissions paid to Heartland employees;

3. Pay agreements for Heartland employees;

4. Banking resolutions and agreements;

5. Engagement letters of auditors; or

6. Heartland's price lists from PLAZE, the primary manufacturer of Heartland products;

h. WD-40 and Heartland did not enforce the non-compete agreement that Heartland had with Hilkene. On information and belief, Hilkene is currently employed by Bissell, a competitor of Heartland and WD-40.

57. A reasonable person would not have entered into the Purchase Agreement or proceeded with the Closing and the acquisition of the WD-40 Stock if she knew that the Representations of Existing Facts were false.

58. Plaintiff was damaged in excess of $5 million because the WD-40 Representations of Existing Facts were false, in that:

a. She received less compensation for the Heartland Stock than she would have received if she had known before the Purchase Agreement was executed and Closing that the Representations of Existing Facts were false;

b. She incurred attorneys and accounting fees and expenses in attempting to obtain access to Heartland Records;

c. She has been unable to secure access to certain of Heartland Records, including but not limited to the electronic and written records of Heartland CFO Conni Woolard;

d. The Purchase Price was reduced significantly because of actions of WD-40 which are contrary to the WD-40 Representations of Existing Facts.

**WHEREFORE**, Plaintiff prays the Court award to her a judgment against WD-40 for her damages and her costs.

**COUNT VII**

**COMMON LAW FRAUD CLAIM AGAINST HILKENE**

59. Plaintiff realleges and incorporates by reference the allegations of Paragraphs 1 through 58 above.

60. Commencing in fall 2001, before signing the Purchase Agreement, Hilkene made to Plaintiff the following representations ("the Hilkene Representations"):

a. Beginning September 1, 2001, Hilkene's annual salary would be $500,000, less applicable taxes and withholdings;

b. That, as President of Heartland, Hilkene would protect the interests of shareholder(s) and anyone with a security interest in the company;

c. That Plaintiff and Hilkene would share equally in the profit/gain resulting from Heartland operations and sale;

d. That Hilkene would not receive a benefit from Heartland or WD-40 in the form of expenses paid or agreements with vendors that Plaintiff would not also receive;

e. That Hilkene would act in good faith in connection with the sale of Heartland;

f. That during the negotiation of the Purchase Agreement and through Closing, Hilkene would only communicate with prospective buyers of Heartland about the operations and financial performance of the business in the past and for the remainder of the year 2002 through Heartland's broker, AG Edwards;

g. That Heartland's May 31, 2002 financial statements would be prepared in accordance with the methodology it used to prepare its December 31, 2001 financial statements;

h. That Hilkene would not allow adjustments to be made to the book value of Heartland in determining the Purchase Price Adjustment;

i. That Hilkene would not allow Heartland to pay expenses that WD-40 was to pay pursuant to past practices of Heartland and generally accepted accounting principles;

j. That WD-40 would not determine or participate in determining the manner in which Heartland prepared its financial statements for any period before the Closing;

k. That Hilkene would work with WD-40 to determine the Heartland Purchase Price Adjustment within seventy-five days of Closing;

l. That Hilkene would provide to WD-40 all current and historical financial records of Heartland;

m. That Hilkene would provide to WD-40 all of the books and records of Heartland that related to its operations, assets and obligations (e.g., support calculations for the bonuses and commissions paid to Heartland employees, pay agreements for Heartland employees, banking resolutions and agreements, engagement letters of auditors, Heartland's price lists from PLAZE, the primary manufacturer of Heartland products);

n. That Hilkene would not receive compensation or any consulting arrangement from WD-40;

o. That the severance pay of employees would be in accordance with the signed severance agreements.

61. Plaintiff was induced to execute the Purchase Agreement and participate in the Closing because of the Hilkene Representations.

62. The Hilkene Representations caused Plaintiff to acquire the WD-40 Stock since Plaintiff would not have entered into the Purchase Agreement or proceeded with the Closing and the acquisition of the WD-40 Stock if the Hilkene Representations had not been made.

63. The Hilkene Representations are false because:

a. Hilkene's annual salary of $500,000 was paid effective November 1, 2000, rather than September 1, 2001, leading to an overpayment of $277,500. Moreover, applicable taxes and withholdings were not withheld from $250,000 of his salary paid in 2001;

b. Hilkene did not protect the interest of Plaintiff as a shareholder and individual with a security interest in the company;

c. Hilkene received a disproportionate portion of the profit/gain resulting from Heartland operations and sale;

d. Hilkene received a benefit from Heartland or WD-40 in the form of expenses paid or agreements with vendors that Plaintiff did not receive;

e. Hilkene did not act in good faith in connection with the sale of Heartland;

f. During the negotiation of the Purchase Agreement and through Closing, Hilkene communicated directly with prospective buyers of Heartland;

g. Heartland's May 31, 2002 financial statements reflect write-offs and accruals that were inconsistent with Heartland's December 31,

2001 financial statements and reduced the Purchase Price. Moreover, althrough Heartland's December 31, 2001 financial statements were audited, Heartland's May 31, 2002 financial statements were not audited;

h. Hilkene allowed adjustments to be made to the book value of Heartland in determining the Purchase Price Adjustment;

i. Hilkene allowed Heartland to pay expenses that WD-40 was to pay pursuant to past practices of Heartland and generally accepted accounting principles;

j. Hilkene allowed WD-40 to participate in determining the manner in which Heartland prepared its financial statements before the Closing;

k. Hilkene did not work with WD-40 to determine the Heartland Purchase Price Adjustment within seventy-five days of Closing;

l. Hilkene did not provide to WD-40 all current and historical financial records of Heartland;

m. Hilkene did not provide to WD-40 all of the books and records of Heartland that related to its operations, assets and obligations (e.g., support calculations for the bonuses and commissions paid to Heartland employees, pay agreements for Heartland employees, banking resolutions and agreements, engagement letters of auditors, Heartland's price lists from PLAZE, the primary manufacturer of Heartland products);

n. Hilkene did not pay severance pay of employees in accordance with the signed severance agreements. Specifically, accordance to Heartland post-Closing payroll records, on June 30, 2002, Heartland paid $325,000 in post-Closing compensation to its employees.

64. Plaintiff was damaged in excess of $5 million because the Hilkene Representations were false, in that:

a. She received less compensation for the Heartland Stock than she would have received if she had known before the Purchase Agreement was executed and Closing that the Hilkene Representations were false;

b. She incurred attorneys and accounting fees and expenses in attempting to obtain access to Heartland Records;

c. She has been unable to secure access to certain of Heartland Records, including but not limited to the electronic and written records of Heartland CFO Conni Woolard;

d. The Purchase Price was reduced significantly because of actions of Hilkene which are contrary to the Hilkene Representations.

**WHEREFORE**, Plaintiff prays the Court award to her a judgment against Hilkene for her damages and her costs.

## REQUEST FOR JURY TRIAL

Plaintiff requests that this action be tried by a jury on all issues so triable.

**DESIGNATION OF PLACE OF TRIAL**

Plaintiff requests that Kansas City be designated as the place of trial.

McCOLLUM & PARKS, L.C.

s/ Frank B.W. McCollum
Frank B.W. McCollum (Ks. S. Ct. 21286)
Stacy M. Bunck (Ks. S. Ct. 20531)
Two Emanuel Cleaver II Blvd., Suite 425
Kansas City, Missouri 64112
Telephone No.: (816) 756-1114
Facsimile No.: (816) 756-0883
ATTORNEYS FOR PLAINTIFF